IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MATTHEW POPKIN, TERRY RYAN,
DORIS RYAN, et al., on behalf of themselves
as individuals and all others similarly situated,

        Plaintiffs,

    v.                           Civil Case No. 0:13-cv-60722-JIC

CITIBANK, N.A.; CITIMORTGAGE, INC.;
ASSURANT, INC.; and AMERICAN
SECURITY INSURANCE COMPANY;

        Defendants.

## MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Page

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND AND ALLEGATIONS ...........................................2
      A.    Matthew Popkin .........................................................................................2

      B.    Doris Ryan ..................................................................................................4

      C.    Terry Freeman .............................................................................................5

III.  ARGUMENT AND CITATION TO AUTHORITY ..............................................6
      A.    Applicable Legal Standard ..........................................................................6

      B.    Plaintiffs Fail to State a Claim for Breach of Contract. ................................7

            1.    Plaintiffs' Mortgage and HELOC Agreements Do Not Prohibit the
                  Payment of Commissions or Other Compensation. .......................... 8

            2.    CMI May Require and Place Insurance Coverage in Amounts
                  Greater than the Unpaid Principal Balance of the Loan. ................. 9

            3.    Because Plaintiffs are Required to Maintain Continuous Coverage,
                  CMI is Authorized to Purchase "Retroactive" Coverage to Ensure
                  That No Lapse Occurs. ................................................................. 10

      C.    To the Extent Plaintiffs' Claim for Breach of the Implied Covenant of
            Good Faith and Fair Dealing is Based on Alleged Commissions,
            "Retroactive" Insurance, or Coverage Requirements, this Claim Must Be
            Dismissed Because Florida Does Not Recognize an Independent Claim .............11

      D.    Plaintiffs' Claim for Unjust Enrichment is Barred Because There is a
            Valid Contract Between the Parties and Plaintiffs Fail to Satisfy Rule 8(a). ........11

            1.    Plaintiffs' Claims are Barred By the Mortgage Agreements. .................. 11

            2.    Plaintiffs' Unjust Enrichment Claim Fails to the Extent It Relies on
                  Allegations that the Insurer Paid or Provided the Benefit to Citi. ............ 12

            3.    Plaintiffs Fail to Allege Sufficient Facts Showing that it Would Be
                  Inequitable for Citi to Retain Any Alleged Commissions. ....................... 13

      E.    Plaintiffs Popkin and Ryan Fail to State a Claim for Violation of the
            FDUTPA. .................................................................................................14

            1.    Popkin's FDUTPA Claim Fails Because Citi's Alleged Conduct is
                  Consistent with the Terms of his Mortgage. ......................................... 14

            2.    Ryan Fails to Plead Sufficient Facts to Show She Suffered Actual

Damages........................................................................................... 15

F.    Plaintiffs' TILA Claim Fails Because Insurance Costs are Exempt from
      TILA and Because Plaintiffs Fail to Allege Sufficient Facts in Support of
      Their Claim. ...............................................................................................15

      1.    Insurance Costs are Exempt from TILA's Disclosure
            Requirements. ........................................................................... 16

      2.    TILA Does Not Require Disclosure of Flood Insurance
            Requirements Because Coverage Requirements Are Not "Finance
            Charges."................................................................................... 16

      3.    Lender-Placement Does Not Trigger a TILA Disclosure
            Requirement................................................................................ 17

      4.    Ryan's TILA Claim is Time Barred. ......................................... 17

G.    Plaintiffs' Fail to State an Anti-Tying Claim Under the BHCA............................18

IV.   **CONCLUSION** ...................................................................................................**20**

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams v. GMAC Mortg. Corp.*,
   1994 U.S. Dist. LEXIS 17854 (N.D. Ill. Dec. 8, 1994)..........................................17

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
   2010 U.S. Dist. LEXIS 168019 (S.D. Fla. Nov. 27, 2012) (Moreno, J.)................12

*Arnett v. Bank of America, N.A.*,
   874 F. Supp. 2d 1021 (D. Or. 2012) ........................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................6, 7

*Bouverat v. Park West Gallery, Inc.*,
   2008 U.S. Dist. LEXIS 116824 (S.D. Fla. Dec. 22, 2008) ...............................14, 15

*Burger King Corp. v. Weaver*,
   169 F.3d 1310 (11th Cir. 1999) ...............................................................................11

*Cohen v. United Am. Bank of Cent. Fla.*,
   83 F.3d 1347 (11th Cir. 1996) ..................................................................................18

*Custer v. Homeside Lending, Inc.*,
   858 So.2d 233 (Ala. 2003)........................................................................................10

*Doe v. Norwest Bank Minnesota, N.A.*,
   107 F.3d 1297 (8th Cir. 1997) ..................................................................................18

*Feaz v. Wells Fargo Bank, N.A.*,
   2012 U.S. Dist. LEXIS 181524 (S.D. Ala. Nov. 16, 2012).......................................9

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
   500 F.3d 1276 (11th Cir. 2007) .............................................................................2, 7

*Gibson v. Chase Home Finance, LLC*,
   2011 U.S. Dist. LEXIS 145122 (M.D. Fla. Dec. 16, 2011)...............................19, 20

*Glazner v. Glazner*,
   347 F.3d 1212 (11th Cir. 2003)(Edmundson, C.J., dissenting) .................................8

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) .................................................................................7

*Hall, et al. v. Bank of America, N.A.,*
  Case No. 12-CIV-22700-FAM, Dkt. 23 (S.D. Fla. Nov. 12, 2012) ........................................20

*Hall v. Bank of America, N.A.,*
  Case No. 1:12-CV-22700-FAM, Dkt. 101 (S.D. Fla. Jan. 31, 2013) ...............................13, 17

*In re Cochran,*
  90 B.R. 523 (Bankr. M.D. Fla. 1988) .....................................................................................8

*In re Managed Care Litig.,*
  185 F. Supp. 2d 1310 (S.D. Fla. 2002) (Moreno, J.) .............................................................12

*In re Mortg. Lender Force-Placed Ins. Litig.,*
  MDL No. 2388 (JPML Sept. 28, 2012) ...................................................................................20

*Jovine v. Abbott Labs., Inc.,*
  795 F. Supp. 2d 1331 (S.D. Fla. 2011) ...................................................................................15

*Kenty v. Bank One, Columbus N.A.,*
  92 F.3d 384 (6th Cir. 1996) ....................................................................................................19

*LaCroix v. U.S. Bank, N.A.,*
  2012 U.S. Dist. LEXIS 85494 (D. Minn. June 20, 2012) ..................................................9, 10

*McClain v. S.C. Nat. Bank,*
  105 F.3d 898 (4th Cir. 1997) ..................................................................................................20

*McKenzie v. Wells Fargo Home Mortg. Inc.,*
  2012 U.S. Dist. LEXIS 155480 (N.D. Cal. Oct. 30, 2012)......................................................10

*Parsons Steel, Inc. v. First. Ala. Bank of Montgomery, N.A.,*
  679 F.2d 242 (11th Cir. 1982) ................................................................................................18

*QSGI, Inc. v. IBM Global Fin.,*
  2012 U.S. Dist. LEXIS 49601 (S.D. Fla. Mar. 13, 2012).......................................................15

*Rios v. City of Del Rio, Texas,*
  444 F.3d 417 (5th Cir. 2006) ....................................................................................................7

*Sanders v. First Nat'l Bank & Trust Co.,*
  936 F.2d 273 (6th Cir. 1991) ..................................................................................................18

*Shilke v. Wachovia Mortg.,*
  820 F. Supp. 2d 825 (N.D. Ill. 2011) ......................................................................................11

*Stump v. WMC Mortg. Corp.,*
  No. 02-cv-326, 2005 WL 645238 (E.D. Pa. Mar. 16, 2005) ..................................................16

*Universal Express, Inc. v. U.S. SEC*,
    177 Fed. Appx. 52 (11th Cir. 2006).................................................................2

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .....................................................................8

*Virgilio v. The Ryland Group, Inc.*,
    680 F.3d 1329 (11th Cir. 2012) ...............................................................12, 13

*Webb v. Chase Manhattan Mortg. Corp.*,
    2008 U.S. Dist. LEXIS 42559 (S.D. Ohio May 28, 2008) ....................................11

*Zarrella v. Pacific Life Ins. Co.*,
    755 F. Supp. 2d 1218 (S.D. Fla. 2010) ...........................................................12

STATUTES

12 U.S.C. § 1972(1)(A)-(B)..............................................................2, 18, 19, 20

15 U.S.C. 1640(e) ...........................................................................................17

Fla. Stat. § 501.211(2)......................................................................................15

OTHER AUTHORITIES

12 C.F.R. § 226.4(d)(2)................................................................................16, 17

12 C.F.R. § 226.17(e)........................................................................................17

12 C.F.R. § 226.18............................................................................................17

12 C.F.R. § 226.18(d)........................................................................................16

12 C.F.R. § 1024.37(c)(1)(iii)............................................................................10

Fed. R. Civ. P. 8......................................................................................6, 11, 12

Fed. R. Civ. P. 12.........................................................................................6, 8

Government Accountability Office, *National Flood Insurance Program* 4 (Sept. 2007),
    *available at* http://www.gao.gov/assets/270/266149.pdf...........................................9

Defendants Citibank, N.A. ("Citibank") and CitiMortgage, Inc. ("CMI") (collectively, "Citi") respectfully submit this motion to dismiss Plaintiffs' Class Action Complaint with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION

Plaintiffs Matthew Popkin, Doris Ryan, and Terry Freeman attempt to assert various claims against Citi related to lender-placed hazard and flood insurance.  Plaintiffs' claims should be dismissed for the simple reason that Plaintiffs' mortgage instruments authorize CMI to determine the amount of insurance coverage required and to force place insurance in the event Plaintiffs fail to maintain adequate insurance on their properties.  Moreover, Plaintiffs' claims that Citi breached their mortgage agreements by "backdating" coverage or accepting commissions in connection with lender-placed insurance are manufactured from whole cloth and are not supported by the language of the mortgage agreements.

Plaintiffs Matthew Popkin ("Popkin"), Doris Ryan ("Ryan"), and Terry Freeman ("Freeman") (collectively, "Plaintiffs") are the mortgagors on mortgage loans or home equity lines of credit ("HELOCs") that were serviced by CMI.  Plaintiffs' mortgage agreements require them to maintain insurance, including hazard and flood insurance, "in the amounts and for the periods" required by their lender.  CMI allegedly force-placed insurance on Plaintiffs' properties, and Plaintiffs contend that CMI thereby breached their mortgage or HELOC agreements because the amount or cost of this force-placed insurance was excessive.  Specifically, Plaintiffs allege that Citi received kickbacks or commissions in connection with the insurance, which inflated the cost of the policy premiums.  Plaintiffs now bring suit against CMI and its parent company, Citibank, for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), breach of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA") (Count V – asserted by Popkin and Ryan against CMI only), alleged violations of the Truth in Lending Act ("TILA") (Count VI) and alleged violations of the Anti-Tying Provisions of the Bank Holding Company Act (the "BHCA") (Count VIII).

Each of Plaintiffs' claims fails as a matter of law because the plain language of their mortgage agreements authorizes Citi to determine the amount of coverage and coverage period, as well as purchase property insurance when Plaintiffs fail to maintain such insurance themselves.  In addition to these general deficiencies, certain of Plaintiffs claims fail as a matter of law for other reasons.  First, to the extent Plaintiffs' claim for breach of the implied covenant

of good faith and fair dealing is premised on conduct expressly authorized by the mortgage or HELOC agreements, this claim fails because Florida law does not recognize an independent claim for breach of the implied covenant in the absence of a breach of an express provision of a contract.   Second, Plaintiffs' claim for unjust enrichment cannot stand because such quasi-contract claims are not applicable where there is an express contract between the parties.   Third, Popkin and Ryan's FDUPTA claims fail for different reasons.   Popkin's claim fails because the alleged conduct is consistent with the express provisions of his mortgage.   Ryan's fails to plead sufficient facts in support of her claim.   Fourth, Plaintiffs' TILA claim fails because insurance costs are exempt from TILA's disclosure requirements.   Moreover, Plaintiff Ryan's TILA claim, which is premised exclusively on alleged conduct occurring more than one year before Ryan filed suit, is time-barred.   Fifth, Plaintiffs' BHCA claim fails because Plaintiffs fail to allege the existence of an anticompetitive tying arrangement or an unusual banking practice.

For the foregoing reasons, this Court should dismiss Plaintiffs' claims with prejudice.

## II.   FACTUAL BACKGROUND AND ALLEGATIONS[1]

### A.   Matthew Popkin

Popkin obtained a mortgage loan in the amount of $417,000 from ABN AMRO Mortgage Group, Inc. on October 18, 2007.   Compl. ¶ 45; *see also* Exhibit 1, a true and correct copy of Popkin's mortgage.[2]   Subsequently, ABN AMRO merged into CMI, and as the surviving entity, CMI became the servicer for Popkin's mortgage.   Compl. ¶ 45.   Popkin's mortgage is secured by his residential property located in Broward County, Florida.   *See* Exhibit 1.

With respect to property insurance, Popkin's mortgage states, in pertinent part:

5.   Property Insurance.   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance.   **This insurance shall be maintained in the amounts (including deductible levels) and for the**

---

[1]   The factual allegations are taken from the Complaint, and are intended only to aid in the Court's resolution of this motion.   Citi does not admit them by including them here.

[2]   Although Plaintiffs refer Popkin's mortgage, it was not attached to the Complaint.   The Court may consider this document as it is referenced in the Complaint, is central to Plaintiffs' claims, and its content is not in dispute.   *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007).   Additionally, the Court may take judicial notice of this document because it is recorded and publicly available.   *Universal Express, Inc. v. U.S. SEC*, 177 Fed. Appx. 52, 53 (11th Cir. 2006).

**period that Lender requires.**  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The Insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . .

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  **Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.**

Exhibit 1, at 4, ¶ 5 (emphasis added).

At the time Popkin closed on his mortgage, he obtained a hazard policy with Citizens, which covered both the dwelling and personal property.  Compl. ¶ 47.  The premium for this policy was approximately $4,600 a year.  *Id.*  Popkin alleges that at some point in 2008, Citi force-placed a second hazard insurance policy without providing notice to him.  *Id.* ¶ 49.

In September 2009, Popkin's Citizens policy lapsed.  *Id.* ¶ 53.  In December 2009, CMI force-placed hazard insurance.  *Id.* ¶ 54.  The policy was backdated to September, when Popkin's Citizens policy lapsed.  *Id.* ¶ 55.  Popkin alleges that CMI debited the portion of the premium payments (in addition to his regular mortgage payment) from Popkin's bank account in March 2010 to cover his regular mortgage payment, as well as the insurance policy.  *Id.* ¶ 56.

Popkin subsequently obtained a new insurance policy with Tower Hill Insurance, and provided notice of the new policy to CMI.  *Id.* ¶ 58.  CMI cancelled the force-placed policy, but Popkin's mortgage payment still allegedly increased by $177 to cover the cost of the insurance from September 2009 through March 2010, the period during which Popkin's property was uninsured.  *Id.* ¶ 58.  While Popkin alleges CMI debited his account a second time in March 2010, Popkin admits that CMI reversed this charge.  *Id.* ¶ 59.[3]

Popkin admits that his Tower Hill Insurance Policy was cancelled one month later, on April 27, 2010, and that he did not secure another policy until nearly two years later, in

---

[3]  While the Complaint alleges that CMI debited this additional amount in March 2011, given the other more specific allegations in the Complaint regarding events allegedly occurring in 2011, it seems likely that Popkin intended to allege that this second debit occurred in 2010.

December 2011.  *Id.* ¶ 60.  In August 2010, because the property was uninsured, CMI purchased a hazard policy.  *Id.* ¶ 61.

Finally, Popkin alleges that in 2010 and 2011, Citi placed flood insurance on his property, but that Popkin's own flood insurance never lapsed.  *Id.* ¶¶ 64-65.

**B.     Doris Ryan**

Ryan obtained a HELOC with a maximum line of credit of $75,000 from Citibank, FSB (which subsequently merged with Citibank).  *Id.* ¶ 73.  Ryan's HELOC is secured by her real property located in Osceola County, Florida.  *Id.* ¶ 72.  Ryan alleges that she maintained $144,100 in flood insurance coverage.  *Id.* ¶ 77.

Ryan's credit agreement (the "HELOC Agreement") contains the following provisions regarding property insurance:

> **4.    Hazard Insuranc**e.  You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy.  All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgage clause in favor of and in form and substance satisfactory to us.

> **6.  Protection of Our Security**.  If You fail to perform Your obligations under this Mortgage, or if any action or proceedings adversely affects our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests.  Any amounts disbursed by Us pursuant to this Paragraph 6 with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Mortgage (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

*Id.* ¶ 74.

Ryan alleges that beginning in 2009 and early 2010, Citibank began requesting proof of Ryan's flood insurance coverage.  *Id.* ¶ 78.  On November 26, 2009, Citibank allegedly purchased a $75,000 insurance policy for Ryan's property and charged $691.20 to her HELOC. *Id.* ¶ 79.  Ryan does not allege that she provided proof of her flood insurance coverage when Citibank initially requested it; however, Ryan does allege that she provided proof of coverage

after Citibank force-placed the insurance.  *Id.* ¶ 80.  Ryan alleges that after she provided proof of coverage, Citibank cancelled the charge for the insurance policy.  *Id.*

Ryan alleges that in early 2010, Citibank sent her letters informing her that her existing insurance coverage was insufficient, and that she needed to increase her flood insurance coverage by $16,900, to a total of $160,000 in coverage.  *Id.* ¶ 81.  When Ryan failed to purchase the additional required insurance, Citibank purchased a policy on her behalf providing $16,900 in coverage and charging $157 to her HELOC.  *Id.* ¶ 82.

Finally, Ryan alleges that Citibank force-placed another $75,000 flood insurance policy on her property and charged her HELOC $691.20. *Id.* ¶ 85.  However, Ryan admits that Citibank cancelled the policy and refunded the $691.20 charge after Ryan provided proof of her $144,100 policy.  *Id.* ¶ 85.  However, Ryan alleges that on May 7, 2011, Citibank purchased another $16,900 policy (which again increased Ryan's total coverage to $160,000), and charged $157 to Ryan's HELOC.  *Id.* ¶ 86.  Ryan alleges that she then paid her HELOC off in full.  *Id.* ¶ 89.

**C.**     **Terry Freeman**

Freeman alleges that he has a mortgage which is serviced by CMI and evidenced by a standard, uniform Federal Housing Administration mortgage agreement. *See Id.* ¶ 93.  Freeman's mortgage is secured by his residential property located in Franklin, Louisiana.  *Id.* ¶ 91.

With respect to insurance, Freeman's mortgage agreement states, in pertinent part:

**4.     Fire, Flood and Other Hazard Insurance**.  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

**7.  Charges to Borrower and Protection of Lender's Rights in the Property.** . . . . If Borrower fails to . . . perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

> Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

*Id.* ¶ 93.

Freeman alleges that CMI force-placed both hazard and flood insurance from 2009 through the present. *Id.* ¶ 96. Freeman does not allege that he ever purchased his own insurance, as required by his mortgage. *See generally id.* CMI allegedly force-placed a hazard insurance policy in February 24, 2009 that provided $72,800 in coverage and cost approximately $1,220.83 per year. *Id.* ¶ 97. CMI renewed this policy in 2010, 2011 and 2012. *Id.* With respect to flood insurance, CMI allegedly purchased a flood insurance policy on or about February 3, 2010, providing $70,555 in coverage and costing approximately $1,094. *Id.* ¶ 98. CMI renewed this policy in 2011 and 2012. *Id.* Freeman alleges that the amount he paid into his mortgage escrow each month increased to cover the cost of these insurance policies. *Id.* ¶ 99.

### III. ARGUMENT AND CITATION TO AUTHORITY

#### A. Applicable Legal Standard

Federal Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts to support the claim. *See* Fed. R. Civ. P. 12(b)(6). Federal Rule 8(a) requires that a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss, the Supreme Court, interpreting Federal Rule 8(a), has held that a court is not required to accept mere "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 5 (2007) (a plaintiff has an "obligation to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and the formulaic recitation of the elements of a cause of action will not do.").

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*,

556 U.S. at 678.   A "court is not required to conjure up unpled allegations," and, therefore, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation marks and citations omitted).   Where conclusory allegations contradict specific factual allegations, the facts control. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

When considering a motion to dismiss, the court must generally limit its consideration to the four corners of the pleading. *Twombly*, 550 U.S. 544, at 556.   However, the Court may consider documents that are attached to the Complaint or are incorporated into the Complaint by reference.   The Court may also consider documents that are not attached to the Complaint if they are referenced in the Complaint, central to the plaintiffs' claims, and their contents are not in dispute. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007).

Applying these standards to the Plaintiffs' claims, the Court should dismiss the Complaint with prejudice.

**B.**   **Plaintiffs Fail to State a Claim for Breach of Contract.**

Central among Plaintiffs' causes of action is their claim for breach of contract.   This cause of action rises or falls on Plaintiffs' claim that Citi breached their mortgage or HELOC agreements by force-placing hazard and/or flood insurance on their properties.[4]   Plaintiffs jointly allege that while their mortgages permit Citi to force-place insurance and charge the borrower for the cost of that insurance, the cost of insurance does not include alleged commissions, kickbacks, or other benefits.   Compl. ¶¶ 122-123.   Plaintiffs also appear to allege that, to the extent CMI force-placed insurance coverage in excess of the current balance of the Plaintiffs' loans, this coverage was excessive and breached their mortgage or HELOC agreements. *See, e.g. id.* at ¶¶ 55, 61.   Additionally, Plaintiffs allege that by placing retroactive coverage, i.e. coverage that goes into effect the day after the borrower's own policy lapsed, CMI breached the mortgage and HELOC agreements. *Id.* ¶ 123.   To the extent Plaintiffs' breach of contract claims are premised on these theories, they fail as a matter of law.

For a breach of contract claim, Florida law requires the plaintiff to plead and establish:

---

[4]   While Plaintiffs state that their individual agreements all contain "substantially similar provisions regarding force-placed insurance requirements" (Compl. ¶ 31), this is simply incorrect.   As demonstrated above, while there are some similarities, there are also critical differences between the insurance provisions, particularly with respect to Popkin's mortgage.

(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). With respect to the element of breach, conduct that is not prohibited by contract or forbidden by law is generally permissible. *See Glazner v. Glazner*, 347 F.3d 1212, 1228 n.11 (11th Cir. 2003)(Edmundson, C.J., dissenting) ("In general, that which is not prohibited is permitted."); *see also In re Cochran*, 90 B.R. 523, 525 (Bankr. M.D. Fla. 1988).[5]

> 1. Plaintiffs' Mortgage and HELOC Agreements Do Not Prohibit the Payment of Commissions or Other Compensation.

Each Plaintiff's breach of contract claim fundamentally fails because the plain language of Plaintiffs' mortgage or HELOC agreements demonstrates that Citi had the discretion to purchase insurance. Moreover, the agreements do not prohibit Citi from receiving any commissions in connection with such insurance.[6] It is a basic tenant of contract law that "[w]hat is not prohibited by contract or forbidden by law is permissible." *Cochran*, 90 B.R. at 525.

A review of the mortgage agreements demonstrates that none of them prohibits earning commissions on lender-placed insurance. *See* Exhibit 1; Am. Compl. ¶¶ 74, 93. For instance, Popkin's mortgage expressly contemplates that "Lender may obtain insurance coverage, at Lender's option and Borrower's expense" and that this insurance may provide less coverage and may be more expensive than insurance Popkin could have obtained. Exhibit 1, ¶ 4. With respect to Ryan's HELOC and Freeman's mortgage, both agreements provide that if the borrower fails to perform his obligations under the agreement (which includes keeping the property insured), then the lender may do what is "reasonably necessary" (Compl. ¶ 74) or "necessary" (*id.* ¶ 93) to protect its interest in the property. None of these provisions prohibits earning a commission in

---

[5]   For purposes of this motion to dismiss, Citi assumes that Florida law applies to each of the Plaintiffs' claims. However, given that Plaintiffs failed to attach any of the mortgage agreements to the Complaint, Citi reserves its right to invoke any applicable choice of law provisions contained therein.

[6]   As noted above, Citi does not concede the truth of the allegation that it received kickbacks, commissions, or other benefits, or that it engages in any reinsurance, but since the present motion is made under Rule 12, the Court must evaluate the claims in the Complaint as alleged.

connection with the force placement of insurance.[7]

In response, Plaintiffs will likely contend that even if it may be "necessary" or "reasonably necessary" to insure property if the borrower fails to do so, it is not necessary for Citi to earn a commission or other benefit in doing so. However, this argument ignores the basic fact that Plaintiffs' own failures to maintain adequate insurance constitute a breach of contract. In essence, Plaintiffs contend that the lender should bear the entire cost of obtaining insurance to remedy the Plaintiffs' breach. When Plaintiffs failed to provide adequate insurance, they not only breached the mortgage agreements, but also forced Citi to take action to ensure that the property was adequately insured, which benefits and protects both Citi's and the Plaintiffs' interest in their property. When this simple fact is considered, Plaintiffs cannot credibly argue that that it is unreasonable or unnecessary for Citi to receive reasonable compensation for the work necessary to insure Plaintiffs' properties when Plaintiffs failed to do so themselves.

2.   CMI May Require and Place Insurance Coverage in Amounts Greater than the Unpaid Principal Balance of the Loan.

Plaintiffs allege that CMI breached the mortgage and HELOC agreements because CMI required Plaintiffs to purchase, or force-placed, insurance coverage that exceeded the unpaid principal balance of their loans. *See, e.g.* Compl. ¶ 130(h). This claim is without merit.

The language of the mortgage and HELOC agreements explicitly provide that CMI may choose the amount of insurance required. Exhibit 1; Compl. ¶¶ 74, 93. This includes requiring insurance at replacement-cost value, which may be higher than the unpaid principal balance of the loan. Several courts have interpreted the same or similar language as authorizing replacement-cost coverage. *See LaCroix v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 85494, at *11-12 (D. Minn. June 20, 2012) ("The plain meaning of the hazard provision provides U.S. Bank discretion to set the applicable amount of flood insurance, and the complaint fails to state a claim for breach of contract."); *Feaz v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 181524,

---

[7]   Indeed, commissions are included in premiums charged for NFIP flood policies. *See* Government Accountability Office, *National Flood Insurance Program* 4 (Sept. 2007), *available at* http://www.gao.gov/assets/270/266149.pdf ("For selling and servicing NFIP policies, FEMA pays WYO insurance companies (1) a flat 15 percent of premiums for agent commissions; (2) a percentage for operating expenses, which historically also average about 15 percent, based on industry average for other lines of insurance; and (3) bonuses of up to 2 percent of their total annual premium revenues for increasing the number of NFIP policies they sell.").

at *22 (S.D. Ala. Nov. 16, 2012) (recommending dismissal of breach of contract claim based on finding that "the Court concludes that Plaintiff has not demonstrated that Defendant has breached the contract between them in force-placing flood insurance coverage at a level that exceeds the amount that Feaz owes under the contract"), *adopted by* 2012 U.S. Dist. LEXIS 180695 (S.D. Ala. Dec. 20, 2012); *McKenzie v. Wells Fargo Home Mortg. Inc.*, 2012 U.S. Dist. LEXIS 155480, at *48 (N.D. Cal. Oct. 30, 2012) (finding that FHA mortgage granted lender discretion to set the amount of insurance and holding that, as a matter of law, lender "did not breach the contract by simply requiring coverage above the outstanding principal loan balance."); *Custer v. Homeside Lending, Inc.*, 858 So.2d 233, 246-47 (Ala. 2003) ("contractually, [the defendant] was given the right to force-place a higher amount, under the provisions of the mortgage authorizing it to force-place insurance against loss 'in such amounts' as it might choose to require.").

Accordingly, the mere allegation that CMI required insurance coverage that exceeded the unpaid principal balance of their mortgage loans fails to state a claim for breach of contract.

3.   Because Plaintiffs are Required to Maintain Continuous Coverage, CMI is Authorized to Purchase "Retroactive" Coverage to Ensure That No Lapse Occurs.

Similarly, the Plaintiffs' agreements do not prohibit "retroactive" insurance. Specifically, Plaintiffs allege that purchasing "retroactive" coverage breaches their agreements because such coverage does not protect Citi's rights in the collateral or cover their risk. Comp. ¶ 123. This conclusion is simply incorrect. The mortgage and HELOC agreements all allow CMI to determine the time periods for which it requires insurance. Exhibit 1; Compl. ¶¶ 74, 93. Moreover, the need for continuous coverage to protect both borrowers and lenders is clear. If there is any gap in coverage, any borrower experiencing a flood or other disaster during this gap-period could face a potential total loss of their home and the lender's interest in the collateral will be at risk. Ensuring there are no lapses in coverage protects both borrowers and lenders from potentially devastating losses. *See, e.g.* Consumer Financial Protection Bureau, *Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X), Final Rule*, 724 (official interpretation of 12 C.F.R. § 1024.37(c)(1)(iii)) (Jan. 17, 2013) ("a servicer may charge borrower for force-placed insurance the servicer purchased, retroactive to the first day of any period of time in which the borrower did not have hazard insurance in place"). Just as regulators have recognized the need for continuous coverage, courts have also rejected claims based on "backdating" or "retroactive" coverage. *See LaCroix*, 2012 U.S. Dist. LEXIS 85494 at *14 (dismissing claim for breach of the implied covenant of good faith and fair dealing premised on

10

allegations that lender backdated insurance because "[b]ackdating policies . . . ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage"); *Shilke v. Wachovia Mortg.*, 820 F. Supp. 2d 825, 834 (N.D. Ill. 2011) ("Plaintiff does not claim that Wachovia has done anything other than what it was entitled to do under the contract: ensure that its interest in the property was protected by continuous, adequate insurance coverage.); *Webb v. Chase Manhattan Mortg. Corp.*, 2008 U.S. Dist. LEXIS 42559 at *54-55 (S.D. Ohio May 28, 2008).

Accordingly, Plaintiffs' allegations regarding "backdated" or "retroactive" coverage fails to state a claim for breach of contract.

**C.**     **To the Extent Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is Based on Alleged Commissions, "Retroactive" Insurance, or Coverage Requirements, this Claim Must Be Dismissed Because Florida Does Not Recognize an Independent Claim.**

Plaintiffs assert a separate claim for breach of the implied covenant of good faith and fair dealing (Count II).  To extent this claim is based on the theory that commissions, coverage over the unpaid principal balance, and "retroactive" insurance was not authorized by the Plaintiffs' agreements, this claim fails as a matter of law.  "Florida courts do not recognize a claim for breach of the implied covenant of good faith and fair dealing absent a breach of an express contractual provision."  *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1314, 1318 (11th Cir. 1999).  As discussed in detail above, to the extent Plaintiffs' fail to state a claim for breach of contract with respect to alleged commissions, backdating, or coverage requirements in excess of the loan balance, their claim for breach of the implied covenant of good faith and fair dealing based on the same conduct similarly fails.  *See, e.g.*, Compl. ¶¶ 130(c), (d), (h).

**D.**     **Plaintiffs' Claim for Unjust Enrichment is Barred Because There is a Valid Contract Between the Parties and Plaintiffs Fail to Satisfy Rule 8(a).**

Plaintiffs' claim for unjust enrichment (Count III) should be dismissed because such quasi-contract claims are barred where there is a valid contract between the parties.  Moreover, Plaintiffs have not established all of the elements of such a claim.  First, Plaintiffs' claim fails to the extent it is premised on allegations that the insurer paid a commission or kickback to Citi because such allegations do not demonstrate that Plaintiffs conferred a direct benefit onto Citi. Second, Plaintiffs cannot show that it was inequitable for Citi to receive any alleged commission in connection with its placement of insurance.

      1.     Plaintiffs' Claims are Barred By the Mortgage Agreements.

Florida limits the applicability of quasi-contract claims, such as claims for unjust enrichment, to only those cases in which there is no express contract between the parties. "No cause of action for unjust enrichment can exist where the parties' relationship is governed by an express contract." *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (dismissing unjust enrichment claim **with prejudice** where the parties did not dispute the existence of a valid agreement). Moreover, a claim for unjust enrichment may only be pled in the alternative under Rule 8(a) "if one or more of the parties contest the existence of an express contract governing the subject of the dispute." *Id.* (*quoting In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002) (Moreno, J.)).

Here, the parties do not dispute that there is a valid contract governing their relationship and the subject matter of their dispute. *See generally* Compl. Indeed, Plaintiffs assert claims for breach of those contracts and for breach of the implied covenant of good faith and fair dealing. *See* Counts I and II of the Compl. Finally, Plaintiffs specifically allege that Citi's discretion to force-place flood insurance is governed by the mortgage agreements. *Id.* ¶¶ 120-123. Because it is undisputed that there is a valid contract between the parties and that the contract governs the subject matter of this dispute, Plaintiffs' claim for unjust enrichment, which Plaintiffs admit is pled in the alternative (*see* Compl. at 34 n.11), is barred.

### 2. Plaintiffs' Unjust Enrichment Claim Fails to the Extent It Relies on Allegations that the Insurer Paid or Provided the Benefit to Citi.

In order to state a claim for unjust enrichment under Florida law, a plaintiff must demonstrate "a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 2010 U.S. Dist. LEXIS 168019, at *14 (S.D. Fla. Nov. 27, 2012) (Moreno, J.); *see also Virgilio v. The Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (applying Florida law).

Florida law requires that the alleged benefit must be provided by the plaintiff directly to the defendant. The Eleventh Circuit's decision in *Virgilio v. The Ryland* Group is instructive here. In *Virgilio*, the plaintiffs alleged that they purchased homes from a builder, the Ryland Group and that the Ryland Group subsequently paid defendant Terrabrook 1.5% of the sale price of each lot in exchange for Terrabrook's marketing of the properties. 680 F.3d at 1332. The plaintiffs alleged that Terrabrook's marketing was false and misleading, and asserted claims for,

12

*inter alia*, unjust enrichment.  *Id.* at 1337.  The Eleventh Circuit affirmed the district court's dismissal of the plaintiffs' unjust enrichment claim, finding that the plaintiffs did not confer a direct benefit on Terrabrook.  *Id.*  Instead, the court found that the plaintiffs conferred the benefit on Ryland, and therefore, any benefit received by Terrabrook was indirect, explaining that "[t]he mere fact that Ryland bargained away its right to 1.5 percent of the purchase price of Plaintiffs' houses did not change the fact that that Ryland, not Plaintiffs, conferred the benefit on [Terrabrook]."  *Id.*

Here, to the extent Plaintiffs allege that the insurers conferred a benefit onto Citi (as opposed to Citi allegedly retaining a portion of the money paid by Plaintiffs to Citi), such allegations fail to state a claim for unjust enrichment.  The alleged benefit, such as a commission or other "kickback", is paid by the insurer to Citi, and therefore is not a benefit conferred directly by Plaintiffs to Citi.[8]  Accordingly, to the extent Plaintiffs' unjust enrichment claim relies on allegations of separate commission payments or other benefits paid directly by the insurer to Citi, Plaintiffs' claim fails as a matter of law.  *Virgilio*, 680 F.3d at 1337.

3.   Plaintiffs Fail to Allege Sufficient Facts Showing that it Would Be Inequitable for Citi to Retain Any Alleged Commissions.

Finally, Plaintiffs' unjust enrichment claim also fails because Plaintiffs cannot show that it would be inequitable for Citi to receive a commission or benefit in connection with the force-placement of insurance.  As discussed in more detail above with respect to Plaintiffs' breach of contract claim, Citi force placed insurance only after Plaintiffs breached their mortgage agreements.  As a result of Plaintiffs' breaches, Citi had to secure insurance to ensure that the property is protected from hazards, including floods.  Contrary to Plaintiffs' allegations, to require Citi to bear the entire burden of arranging adequate insurance coverage as a result of Plaintiffs' breach of the mortgage agreements would be inequitable.

---

[8] Plaintiffs may attempt to distinguish *Virgilio* by arguing that the property prices paid by the plaintiffs were set independently of the marketing fee, and that the prices paid by the plaintiffs would not have been reduced, whereas here, if no alleged commissions were paid to CMI, Plaintiffs would have paid less for force-placed insurance.  This distinction is unpersuasive.  As established by Defendant American Security Insurance Company in its motion to dismiss Plaintiff's previous claims, Plaintiffs were charged with a filed rate, which was approved by state insurance regulators.  *See Hall v. Bank of America, N.A.*, Case No. 1:12-CV-22700-FAM, Dkt. 101 (S.D. Fla. Jan. 31, 2013).  Even if no alleged commissions were paid, the amount in premiums paid, as determined by the filed rate, would have been unchanged.

**E.**     **Plaintiffs Popkin and Ryan Fail to State a Claim for Violation of the FDUTPA.**

      Popkin and Ryan allege that CMI violated FDUTPA (Count V). With respect to Popkin, his FDUTPA claim fails because CMI's alleged conduct was entirely consistent with his mortgage. Ryan's claim fails because she does not allege sufficient facts to demonstrate that she suffered actual damages, which is a necessary element of a claim under FDUTPA.

      1.     Popkin's FDUTPA Claim Fails Because Citi's Alleged Conduct is Consistent with the Terms of his Mortgage.

      Popkin's FDUTPA claim fails because CMI's alleged conduct is entirely consistent with the express provisions of his mortgage. A FDUTPA claim cannot survive dismissal where the alleged misconduct is consistent with the parties' contract. *Bouverat v. Park West Gallery, Inc.*, 2008 U.S. Dist. LEXIS 116824, at *9 (S.D. Fla. Dec. 22, 2008) (dismissing FDUTPA claim to the extent it was premised on conduct that was entirely consistent with the parties' contract).

      In *Bouverat*, the plaintiff alleged that an art gallery violated FDUTPA in connection with appraisals of artwork plaintiff purchased on two grounds. First, the plaintiff alleged that the gallery failed to disclose that it had exclusive rights to the artwork, which limited the market for the art and potentially inflated the price. 2008 U.S. Dist. LEXIS 116824, at *8. Second, the plaintiff alleged that the gallery violated FDUTPA because it did not disclose to him that the works would be appraised in-house, and not by a third party. *Id.* at *9. The court found that the first ground was sufficient to state a claim under FDUTPA because a reasonable consumer may think and act differently if he knew that the gallery was the only one selling the art. *Id.* at *8-9. Specifically, the court explained that "[a] reasonable consumer would likely think differently (and likely act differently) about Park West's appraisal (and appraisal method) if he knew that Park West was the only gallery selling the art in question, **because such a limited market is bound to have some effect on price.**" *Id.* at *8-9 (emphasis added). However, the court rejected the second ground, finding that the plaintiff's contract with the gallery expressly provided that the gallery would appraise the art. *Id.* at *9.

      Here, Popkin complains that the insurance CMI allegedly force-placed on his property was more expensive than the policies he purchased on his own and that the force-placed policies provided less coverage than his own policies. *See, e.g.* Compl. ¶¶ 62, 28. However, as discussed in more detail above, Popkin's mortgage specifically provides that a lender-placed insurance policy may provide less coverage and be "significantly" more expensive. Exhibit 1, ¶ 5. Because the alleged conduct is entirely consistent with Popkin's mortgage, his claim fails as a

matter of law.  The comparison to the facts in *Bouverat* illustrates this point.  The *Bouverat* court found that the gallery's failure to disclose its exclusive rights stated a claim for a FDUTPA violation was because the consumer was unable to consider the effect of such a limited market on the price of the art.  2008 U.S. Dist. LEXIS 116824, at *9.  By contrast, in this case, Popkin had express notice of the effect on price created when CMI force-placed insurance on the property.  Accordingly, CMI's alleged conduct is entirely consistent with the parties' contract, and therefore, Popkin's FDUTPA claim fails as a matter of law.

2.      Ryan Fails to Plead Sufficient Facts to Show She Suffered Actual Damages.

Ryan's FDUTPA claim also fails because the Complaint does not allege sufficient facts to show Ryan suffered actual damages.  FDUTPA provides that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person shall recover actual damages, plus attorney's fees and court costs as provided in Section 501.2105." Fla. Stat. § 501.211(2).  Thus, actual damages are a necessary element of a FDUTPA claim.  *See Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) (dismissing FDUTPA claim where plaintiff failed to adequately allege actual damages); *QSGI, Inc. v. IBM Global Fin.*, 2012 U.S. Dist. LEXIS 49601, at *12-13 (S.D. Fla. Mar. 13, 2012) (same). Under FDUTPA, "the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties." *Id.*

Here, Ryan's FDUTPA claim is premised on allegations that the premiums she was charged were "inflated."  However, Ryan fails to allege sufficient facts to support this conclusory assertion or to satisfy the actual damages element of her FDUTPA claim.  Specifically, Ryan fails to allege any facts showing that the cost of the flood insurance Citibank allegedly force-placed on her property was inflated, i.e. above market rate.  For instance, Ryan fails to allege any facts regarding comparable market rates from which such an inference could be drawn.  *See* Compl. ¶¶ 72-90.  Moreover, as noted above, because Ryan was charged a filed-rate, she cannot show that she suffered actual damages because she paid a rate that was approved by state insurance regulators.  *See supra* at 13 n.8.  Because Ryan fails to allege any facts from which this Court could plausibly infer that Ryan incurred actual damages, Ryan fails to state a claim under FDUTPA.

**F.    Plaintiffs' TILA Claim Fails Because Insurance Costs are Exempt from TILA and Because Plaintiffs Fail to Allege Sufficient Facts in Support of Their Claim.**

Plaintiffs' TILA claim (Count VI) fails because TILA's implementing regulation,

15

Regulation Z, specifically exempts hazard and flood insurance costs from TILA's disclosure requirements, and flood insurance requirements are not "finance charges" under TILA. Additionally, lender-placement of insurance does not trigger new disclosure obligations. Finally, Ryan's TILA claim is time-barred.

1.   Insurance Costs are Exempt from TILA's Disclosure Requirements.

TILA's implementing regulation, Regulation Z, specifically exempts insurance costs from TILA's disclosure requirements. *See* 12 C.F.R. § 226.4(d)(2). For closed-end credit transactions such as Popkin and Freeman's mortgage loans, Regulation Z requires creditors to disclose a series of items related to the transaction, including the "finance charge," *i.e.*, "the dollar amount the credit will cost [the borrower]." *See* 12 C.F.R. § 226.18(d). Under 12 C.F.R. § 226.4(d)(2), however "[p]remiums for insurance against loss of or damage to property" – such as hazard and flood insurance – "may be excluded from the finance charge if . . . [t]he insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed."

Plaintiffs were free to choose from whom they purchased their flood insurance. *See* Exhibit 1, ¶ 5; Compl. ¶¶ 74, 93. The sole restriction on their ability to choose was that the lender had to approve Plaintiffs' choice of insurer. Far from giving rise to a disclosure obligation under TILA, this language in fact was sufficient to place Plaintiffs on notice that they could purchase flood insurance from a carrier of their choice. *Stump v. WMC Mortg. Corp.*, No. 02-cv-326, 2005 WL 645238, at *6 (E.D. Pa. Mar. 16, 2005) (no disclosure of hazard insurance requirement required under TILA where consumer was informed that "[y]ou may obtain the insurance from anyone that is acceptable to the creditor"). TILA, therefore, did not require any disclosures related to Plaintiffs' insurance premiums.

2.   TILA Does Not Require Disclosure of Flood Insurance Requirements Because Coverage Requirements Are Not "Finance Charges."

Ryan and Freeman additionally allege that Citi violated TILA by misrepresenting that they were "obligated by federal law to maintain flood insurance in amounts greater than required by law, and/or greater than necessary to protect their interest in the property securing the mortgages" and by "fail[ing] to correct the original disclosures when the prior disclosures clearly differ from the Citi Defendants' current insurance requirements." Compl. ¶ 168.

As an initial matter, neither Ryan nor Freeman alleges any facts regarding the content of any prior disclosures. Nor do these Plaintiffs allege any facts regarding the notices or disclosures allegedly sent by CMI regarding flood insurance. Indeed, Ryan alleges that Citi stated that her

16

coverage was insufficient, but she never alleges what CMI represented to her regarding the amount CMI actually required.  Compl. ¶ 81.  Freeman does not allege any facts at all regarding disclosures.  *See id.* ¶¶ 91-103.  Moreover, even if Ryan or Freeman alleged sufficient facts regarding the alleged disclosures, this claim still fails.  Flood insurance requirements do not fall within the definition of finance charge.  12 C.F.R. § 226.18.  Accordingly, these allegations fail to state a claim under TILA.

       3.       Lender-Placement Does Not Trigger a TILA Disclosure Requirement.

Plaintiffs also allege that Citi violated TILA by (1) "add[ing] force-placed insurance to Plaintiffs' mortgage obligations" (Compl. ¶ 164); (2) "chang[ing] the terms of Plaintiffs' loans after origination to allow themselves or an affiliate to receive a kickback (*id.* ¶ 166); and (3) changing the terms of Plaintiffs' loans after origination by requiring or threatening to force-place more insurance than necessary to protect their interest in the property securing the mortgages" (*id.* ¶ 167).  However, these allegations do not state a claim under TILA.

First, there mere allegation that Citi added force-placed insurance to Plaintiffs' mortgage obligation does not state a claim or change the terms of their mortgages because the mortgages expressly allow Citi to force place insurance.  *See* Exhibit 1, Compl. ¶ 74, 93.

Second, for closed-end loans, such as Plaintiff Popkin and Freeman's mortgage loans, post-closing additional disclosures are only required for (1) private education loans; (2) where an adjustable rate mortgage adjusts; and (3) for a "refinancing."  12 C.F.R. § 226.17(e).  None of these exceptions applies.  *See Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021, 1038 (D. Or. 2012) ("Even if TILA required ongoing notices, however, [the bank]'s flood insurance requirements would still be subject to the exemption provided by 12 C.F.R. § 226.4(d)(2)."); *Adams v. GMAC Mortg. Corp.*, 1994 U.S. Dist. LEXIS 17854, at *19-20 (N.D. Ill. Dec. 8, 1994)(finding that force-placement of hazard insurance was not a "refinancing" and therefore, new disclosures under TILA were not required).  Accordingly, Popkin's and Freeman's TILA claims also fail for this additional reason.

       4.       Ryan's TILA Claim is Time Barred.

Finally, even if Ryan stated a claim for a TILA violation (she does not), Ryan's TILA claim is time-barred.  A claim for damages under TILA is subject to a one-year statute of limitations, which runs from "the date of the occurrence of the violation." 15 U.S.C. 1640(e).  Here, the last date Ryan alleges Citibank force-placed insurance on her property is May 7, 2011.

Compl. ¶ 86.  This alleged violation occurred more than one year before Ryan asserted this claim against Citi.  Specifically, Ryan did not assert any claims against Citi until November 11, 2012. *See Hall*, Case No. 12-CIV-22700-FAM, Dkt. 23 (S.D. Fla. Nov. 12, 2012).

Accordingly, even if Ryan alleged sufficient facts to state a claim under TILA against Citi, her claim is time-barred and should be dismissed.

**G.      Plaintiffs' Fail to State an Anti-Tying Claim Under the BHCA.**

Finally, Plaintiffs fail to allege a violation of the BHCA.  The BHCA prohibits a bank from extending credit or furnishing a service to a borrower "on the condition or requirement" that the customer obtain an additional service from the bank or its subsidiaries.  12 U.S.C. § 1972(1)(A)-(B).  Plaintiffs' BHCA claim fails because Plaintiffs have not demonstrated the existence of "anticompetitive tying arrangement" or an "unusual banking practice."  *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1350 (11th Cir. 1996).

To state a claim for violation of the BHCA, a plaintiff must allege "(1) an anticompetitive tying arrangement; (2) the banking practice at issue was unusual in the banking industry; and (3) the practice must benefit the bank."  *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 278 (6th Cir. 1991).  An anti-competitive tying arrangement exists when a lender requires borrowers who wish to purchase one product or service (the tying product) to purchase "some other service or product," even if the borrower does not want the additional service or product (the tied product).  *Parsons Steel, Inc. v. First. Ala. Bank of Montgomery, N.A.*, 679 F.2d 242, 246-47 (11th Cir. 1982).  Here, the Plaintiffs fail to demonstrate either that an anticompetitive tying arrangement existed, or that the alleged practice was unusual.

With respect to the anticompetitive tying arrangement, Plaintiffs fail as a matter of law to sufficiently allege the existence of such an arrangement.  First, Plaintiffs' own allegations demonstrate that no tying product exists.  Plaintiffs allege that the tying product is Citi's purchase of force-placed insurance.  Compl. ¶ 189.  However, Plaintiffs concede that the force-placement of insurance is not a product or service marketed to consumers, but rather an action Citi takes to protect its own interest in the property when the borrower fails to maintain insurance.  *See* Compl. ¶¶ 5, 6, 130(h); *see also Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1304 (8th Cir. 1997) (noting that borrower's allegation that he "elected" to purchase force-placed insurance through the bank is "a highly debatable characterization of the facts.").

Second, Plaintiffs fail to allege the existence of a tied product.  In the Complaint,

Plaintiffs allege that the tied, or unwanted, product is Citibank's or its affiliate's service of acting as an insurance agent.   Compl. ¶ 188.   However, in support of their argument that any commissions paid in connection with lender placed insurance are unearned, Plaintiffs specifically allege that Citibank or its agent provides no service at all for the commissions it receives.   *Id.* ¶ 36 ("The money kicked back to the Citi Defendants or a Citi affiliate is not given in exchange for any services provided in connection with the placement of new insurance coverage; . . . **In reality, however, no work is ever done by the affiliate to procure insurance for that particular borrower** . . . .").   Accordingly, Plaintiffs admit that no tied product or service exists.

Third, Plaintiffs fail to allege that any arrangement was anticompetitive.   Specifically, the Plaintiffs' mortgage and HELOC agreements all provide that Plaintiffs may choose their own insurance provider.   *See* Compl. ¶¶ 74, 93; Exhibit 1 at ¶ 5.   Courts have repeatedly held that where the borrower has a choice in connection with the purchase of insurance protecting collateral, there is no anticompetitive tying arrangement.   The Sixth Circuit's decision in *Kenty v. Bank One, Columbus N.A.*, 92 F.3d 384 (6th Cir. 1996) is instructive.   The court affirmed the district court's dismissal of the plaintiff's BHCA claims related to the force-placement of insurance on the plaintiff's vehicles in connection with an auto loan.   *Id.* at 388.   The plaintiffs' loan agreements required that the plaintiffs maintain adequate insurance, and that if they failed to do so, the bank could obtain coverage at the plaintiffs' expense.   *Id.*   The court held that no anti-competitive tying arrangement existed because

> "the Bank did not require that plaintiffs purchase any insurance through it or [the Bank's chosen insurer].   Indeed, the plaintiffs were free to purchase the insurance on the open market at fully competitive prices.   In a sense, the Bank was willing to compete with other providers of insurance and thus it is hard to see how this practice can be considered anticompetitive."

*Id.* at 395; *see also Gibson v. Chase Home Finance, LLC*, 2011 U.S. Dist. LEXIS 145122, at *20-22 (M.D. Fla. Dec. 16, 2011) (dismissing BHCA claim because plaintiff failed to allege sufficient facts to show that the force-placement of insurance was anti-competitive).[9]

---

[9]   Moreover, Plaintiffs' allegations regarding the purported anticompetitive nature of the alleged tying arrangement relate solely to the alleged harm to the plaintiffs and other borrowers caused by the arrangement.   *See* Compl. ¶ 187.   However, pretermitting whether the alleged arrangement in fact harms borrowers, Plaintiffs' allegations fail to demonstrate how the alleged conduct is "anticompetitive," particularly where Plaintiffs also allege that better, less expensive coverage was freely available on the open market.   *Id.* ¶¶ 47, 62, 68.

19

Plaintiffs also fail to satisfy the second element of a BHCA claim, which is that the alleged practice is unusual.  Lender-placement of insurance on the collateral securing a loan is not in any way an unusual practice.  "A bank commonly protects an investment by requiring the borrower to insure the loan's collateral."  *Gibson*, 2011 U.S. Dist. LEXIS 145122, at *19 (citing *McClain v. S.C. Nat. Bank*, 105 F.3d 898, 902 (4th Cir. 1997).  Moreover, the recent actions by Plaintiffs' counsel belie their contention that the alleged practice of receiving commissions, "kickbacks" or other compensation in connection with lender-placed insurance is unusual.  *See* Compl. ¶ 185.  Specifically, counsel for Plaintiffs sought to create an industry-wide MDL against six different banks, which collectively service the majority of consumer home loans.  *In re Mortg. Lender Force-Placed Ins. Litig.*, MDL No. 2388 (JPML Sept. 28, 2012).  After the Judicial Panel for Multidistrict Litigation refused to consolidate the cases, Plaintiffs' counsel filed an amended complaint in the matter captioned *Hall, et al. v. Bank of America, N.A.*, Case No. 12-CIV-22700-FAM, Dkt. 23 (S.D. Fla. Nov. 12, 2012), in which Plaintiffs attempted create a *de facto* industry-wide MDL asserting similar claims based on allegations of similar conduct related to lender-placed insurance.  While each lender has its own individual policies and procedures regarding the force-placement of insurance, it is clear that the alleged practice of receiving commissions or other compensation in connection with lender-placed insurance is not "unusual."

Because Plaintiffs fail to establish either the existence of an anticompetitive tying arrangement or an unusual practice, Plaintiffs fail to state a claim for violation of the BHCA.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Citibank and CMI respectfully request that the Court dismiss Plaintiffs' Class Action Complaint with prejudice for failure to state a claim upon which relief can be granted, and grant such other relief as it deems just and equitable.

Dated:  April 19, 2013

Respectfully Submitted,

By: */s/ Guy E. Quattlebaum*
GUY E. QUATTLEBAUM
Fla. Bar No. 086185
guy.quattlebaum@akerman.com
AKERMAN SENTERFITT
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313


Christopher J. Willis, Esq.
Ga. Bar No. 766297 (*admitted pro hac vice*)
willisc@ballardspahr.com
Stefanie H. Jackman, Esq.
Ga. Bar No. 335625 (*admitted pro hac vice*)
jackmans@ballardspahr.com
Sarah T. Reise, Esq.
Ga. Bar No. 181567 (*admitted pro hac vice*)
reises@ballardspahr.com
BALLARD SPAHR, LLP
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309-2915
Telephone: (678) 420-9300
Facsimile: (678) 420-9301


*Attorneys for Defendants CitiMortgage, Inc. and Citibank N.A.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Guy E. Quattlebaum*
GUY E. QUATTLEBAUM
Fla. Bar No. 086185

**SERVICE LIST**

| | |
|---|---|
| Adam M. Moskowitz, Esquire<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esquire<br>tr@kttlaw.com<br>Rachel Sullivan, Esquire<br>rs@kttlaw.com<br>Robert J. Neary, Esquire<br>rn@kttlaw.com<br>KOZYAK, TROPIN, & THROCKMORTON<br>P.A.<br>2525 Ponce de Leon Boulevard<br>9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:  (305) 372-3508<br>*Counsel for Plaintiffs* | Aaron S. Podhurst, Esquire<br>apodhurst@podhurst.com<br>Peter Prieto, Esquire<br>pprieto@podhurst.com<br>Stephen F. Rosenthal, Esquire<br>srosenthal@podhurst.com<br>John Gravante, Ill, Esquire<br>jgravante@podhurst.com<br>Matthew Weinshall, Esquire<br>mweinshall@podhurst.com<br>PODHURST ORSECK, P.A.<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, FL 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* |
| Alexander P. Owings, Esquire<br>apowings@owingslawfirm.com<br>Steven A. Owings, Esquire<br>sowings@owingslawfirm.com<br>OWINGS LAW FIRM<br>1400 Brookwood Drive<br>Little Rock, AR 72202<br>Telephone: (501) 661-9999<br>Facsimile:  (501) 661-8393<br>*Counsel for Plaintiffs* | Guy E. Quattlebaum, Esquire<br>AKERMAN SENTERFITT<br>222 Lakeview Avenue, Fourth Floor<br>West Palm Beach, FL 33401<br>Telephone:  (561) 653-5000<br>Facsimile:  (561) 659-6313<br>guy.quattlebaum@akerman.com<br>*Counsel for Defendants CitiMortgage, Inc. and*<br>*Citibank N.A.* |
| Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Sarah Engel, Esquire<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esquire<br>hbushman@harkeclasby.com<br>HARKE CLASBY & BUSHMAN LLP<br>9699 NE Second Avenue<br>Miami Shores, FL 33138<br>Telephone:    (305) 536-8220<br>Facsimile:     (305) 536-8229<br>*Counsel for Plaintiffs* | Christopher J. Willis<br>willisc@ballardspahr.com<br>Sarah T. Reise<br>reises@ballardspahr.com<br>Stefanie H. Jackman<br>jackmans@ballardsphar.com<br>Ballard, Sphar<br>999 Peachtree Street, Suite 1000<br>Atlanta, GA 30309-3915<br>Telephone: (678)420-9436<br>Facsimile: (678)420-9301<br>*Counsel for Defendants CitiMortgage, Inc. and*<br>*Citibank N.A.* |

| | |
|---|---|
| Michael L. Addicott, Esquire<br>mlaesq@addicottlaw.com<br>ADDICOTT & ADDICOTT, P.A.<br>900 North Federal Highway<br>Suite 201<br>Hallandale Beach, FL 33009<br>Telephone: 954-454-2605<br>*Counsel for Plaintiffs* | Jeffrey N. Golant, Esquire<br>jgolant@jeffreygolantlaw.com<br>LAW OFFICES OF JEFFREY N. GOLANT,<br>P.A.<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiffs* |
| Cadio Zierpoli, Esquire<br>California Bar No. 179108<br>cadio@saveri.com<br>SAVERI & SAVERI, INC.<br>706 Sansome Street<br>San Francisco, CA 94111<br>Telephone: (415) 217-6810<br>Facsimile: (415) 217-6813<br>*Counsel for Plaintiffs* | Catherine E. Anderson, Esquire<br>Oren Giskan, Esquire<br>GISKAN SOLOTAROFF ANDERSON &<br>    STEWART LLP<br>11 Broadway, Suite 2150<br>New York, NY 10004<br>Telephone: 212-847-8315<br>canderson@gslawny.com<br>ogiskan@gslawny.com<br>*Counsel for Plaintiffs* |
| Gary B. Englander, Esq.<br>genglander@conradscherer.com<br>Matthew Seth Sarelson, Esquire<br>msarelson@conradscherer.com<br>CONRAD & SCHERER, LLP<br>P.O. Box 14723<br>Fort Lauderdale, FL 33302<br>Telephone:  (954) 462-5500   .<br>Facsimile:  (954) 463-9244<br>*Counsel for Plaintiffs* | Brian J. Stack, Esquire<br>bstack@stackfernandez.com<br>STACK FERNANDEZ ANDERSON &<br>    HARRIS, P.A.<br>1200 Brickell Avenue, Suite 950<br>Miami, FL 33131<br>Telephone:  (305) 371-0001<br>Facsimile:  (305) 371-0002<br>*Counsel for Plaintiffs* |
| Mary Kestenbaum Fortson<br>mkestbaum@merlinlawgroup.com<br>Sean Michael Shaw<br>sshaw@merlinlawgroup.com<br>William F. Merlin, Jr.<br>cmerlin@merlinlawgroup.com<br>The Merlin Law Group<br>777 South Harbour Island Boulevard<br>Suite 950<br>Tampa, FL 33602<br>Telephone:  (813) 229-1100<br>Facsimile:  (813) 229-3691 | Franklin G. Burt, Esquire<br>Farrokh Jhabvala, Esquire<br>JORDEN BURT LLP<br>777 Brickell Avenue, Suite 500<br>Miami, FL 33131-2803<br>Telephone:  (305) 347-6833<br>Facsimile:  (305) 372-9928<br>fgb@jordenusa.com<br>fj@jordenusa.com<br>*Counsel for Defendant, American Security*<br>*Insurance Company and Voyager Indemnity*<br>*Insurance Company* |

| | |
|---|---|
| Jason Kyle Whittemore, Esquire<br>WAGNER VAUGHAN & MCLAUGHLIN<br>PA<br>601 Bayshore Boulevard, Suite 910<br>Tampa, FL 33606<br>Telephone:  (813) 225-4000<br>Facsimile:  (813) 225-4010<br>jason@wagnerlaw.com<br>*Counsel for Plaintiff* | |